ANGUSTIAS LEONIDAS CASTRO BOYRIE, Plaintiff and Appellee, *v.* FERMÍN MELÉNDEZ LIND, Defendant and Appellant.

No. 12706. Submitted April 20, 1961.—Decided May 4, 1961.

*Ubaldo Aponte* for appellant.  *Helios A. Zeno* for appellee and the Legal Aid Society of Puerto Rico.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The petitioner, Angustias Leonidas Castro appealed to the Superior Court, Guayama Part, by habeas corpus, requesting that the defendant Fermín Meléndez Lind be ordered to give her the custody of three minor sons, born of the marriage contracted between them and which had been

dissolved by a divorce decree. She alleged that the patria potestas and custody of said minors had been granted to her by virtue of a pronouncement to that effect in said judgment, that she was in good economic conditions to provide the three minors with the proper environment for their growth, and they could not remain under the custody of their father because said defendant has shown gross unconcern in regards to the care, personal cleanliness and other attention for the minors and that the true reason the defendant has for retaining the minors is to avoid the payment of the support allowance for the amount of $37.50 which he is compelled to pay each month by virtue of the judicial order. She concludes that the best interests of the minors require that they continue under the care of the petitioner.

In his answer, the defendant admitted that he has kept the three minor sons—who in 1959 were 10, 9 and 8 years old —under the custody and immediate care of his parents and under the close supervision of the defendant because the petitioner abandoned them; that her conduct, in receiving and having sexual intercourse with other men in the presence of the minors is prejudicial to the latter; that since the date of the divorce, the petitioner has had two children as a result of illicit relations with other men who have not lived permanently with her; that the minors are given careful attention and attend school regularly; and finally, that the health, welfare and comfort of the children require that the present situation which has given rise to the petition be not altered.

At the hearing, the parties stated that the local office of Public Welfare be ordered to make an investigation "to determine which one of the parents should have the custody of the aforesaid minors." No other evidence was presented and the case was submitted on the basis of the report made on May 12, 1959 which was made a part of the judgment. The trial court, after studying the report, determined briefly;

"'since from the report there does not arise any fundamental reason for depriving the petitioner of her right to the custody of the minors in question," the petition for habeas corpus is hereby granted. It rendered the corresponding judgment, and from this judgment an appeal was timely taken.

■■ Before considering the merits of the appeal it is necessary to point out that we are not before a case which involves the repeated doctrine that we shall not alter on appeal or review the findings of fact of the trial court unless it is shown that there is not sufficient evidence in the record to support said findings, or where it appears that the court was moved by passion, prejudice or partiality.[1] This doctrine, which has become a rule of law is only applicable when the case involves the weighing of the evidence consisting of the testimony of the witnesses, for the clear reason that the trial court is in a better position to observe their attitude, their way of testifying, their gestures, and in general their conduct in the witness stand.[2] Said deference to the unique opportunity that the trial court has cannot be extended to the weighing of documentary evidence or to the testimony of the witnesses given by written statements. Under such circumstances we are in the same condition to make our own determinations, which we cannot waive, without affecting the effectiveness of our judicial duty to review.[3]

[1] *Ramírez* v. *Ramírez*, 80 P.R.R. 501 (1958); *Freytes* v. *Municipality*, 80 P.R.R. 505 (1958); *Géigel* v. *Ramos*, 79 P.R.R. 812 (1957); *Luperena* v. *P. R. Transportation Authority*, 79 P.R.R. 438 (1956).

[2] *Toro* v. *Mojica*, 79 P.R.R. 593 (1956); *Vidal* v. *Barletta*, 79 P.R.R. 752 (1957); *Martín* v. *Torres*, 79 P.R.R. 370 (1956). Rule No. 43.1 of Civil Procedure of 1958 expressly provides that "Findings of facts *based on oral evidence* shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

[3] *Feliciano* v. *Sundem*, 78 P.R.R. 1, 6 (1955); *Luce & Co.* v. *Cianchini*, 76 P.R.R. 155, 158 (1954); *Rivera* v. *Great American Indemnity Co.*, 73 P.R.R. 223 (1952); *Nogueras* v. *Muñoz*, 67 P.R.R. 413, 416 (1947); *International General Electric Co.* v. *Colón*, 62 P.R.R. 550 (1943).

560

In an appeal such as the present one, the mission of the court, in the exercise of the State's *parens patriae*, is to determine to whom the custody of the minor children corresponds guided primarily by their welfare and comfort. *Pratt* v. *Reuter*, 79 P.R.R. 907, 922 (1957) ; *Muñoz* v. *Torres*, 75 P.R.R. 476 (1953) ; *Santos* v. *Berdecía*, 73 P.R.R. 713 (1952) ; *Rodríguez* v. *Pagán*, 67 P.R.R. 321 (1947) ; *Fernández* v. *Martínez*, 59 P.R.R. 548 (1941) ; *Ríos* v. *Lafosse*, 59 P.R.R. 510 (1941) ; *Llopart* v. *Mesorana*, 49 P.R.R. 242 (1935) ; *Chardón* v. *District Court*, 45 P.R.R. 604 (1933) ; *Babá* v. *Rodríguez*, 36 P.R.R. 453 (1927) ; *Blanco* v. *Hernández*, 32 P.R.R. 20 (1923) ; *Chabert* v. *Sánchez*, 29 P.R.R. 225 (1921) ; *Custody of Minor, Best-Interest-of the Child Rule*, 32 Tul. L. R. 499 (1958) ; *Child's Custody, The Test of a Child's Welfare*, 32 Rocky Mt. L. R. 397 (1960). However, the trial court limited itself to deciding that there was no fundamental reason for depriving the petitioner of her *right* to the custody of the minors, without making any pronouncement as to their best welfare. Apparently it rested on the right of patria potestas and custody granted to the mother by virtue of the divorce decree. But that was not the fundamental principle involved in the present case. The question at issue required a specific determination on the part of the court as to the welfare and convenience of the children, regardless of the petitioner's *right*. It was not a question of determining whether the evidence presented justified depriving plaintiff of the custody of the minors but whether, after considering all the factors applicable to these cases, the welfare of the children required that they remain under the custody of either one of them. Nelson, *Divorce and Annulment* 164 *et seq.* (1945 ed.). And with regard to this particular, even admitting that preference should be given to the mother when children of a tender age are involved, and that mere economic advantages should not tilt the balance heavily in favor of the father, we believe that the evidence

admitted does not warrant the conclusion that the custody should be restored to the mother. Taken as a whole, we must hold that the welfare, comfort and moral upbringing of the minors require that they remain under the custody of the defendant father. *Cf. Loss of Custody of Minor Children Because of Immoral Conduct,* 28 Rocky Mt. L. R. 138 (1955).

The evidence which consisted solely of the written report rendered by the Public Welfare Office,[4] reveals that the plaintiff lives in a public housing project with two minor children; that one of these children was had from her relations with Martín Ramos; that the neighbors have frequently complained of her conduct, since the apartment she occupies is visited by different men, and although no scandals are produced, the children witness incidents which they later discuss with their neighbor's children; that the petitioner had sexual intercourse with these men who "went across the bedroom to the bathroom completely naked and were (thus) seen by the minors"; that the petitioner has no known economic means of support and that she and her two children live on the alimony paid by the defendant and the father of the newly

---

[4] The general rule is that a court, when exercising its discretion or pursuant to express authorization in a statute to that effect, may order independent investigation in proceedings relating to the custody of minors in order to gather any information possible for the purpose of reaching an adequate decision. However, the parties may not be deprived of an impartial judgment, that is, of a trial attended by the minimum requisites of the due process of law. Now, when a party has consented to the use of a report from a Welfare Agency it cannot complain later, on appeal, that he was deprived of the due process of law. It is likewise well settled that even when a report is admitted, the court may or may not give it weight for the purpose of its final determination, since the power of *parens patriae* when deciding the custody of minors may not be delegated. See *State ex rel. Van Loh* v. *Prosser,* 98 N.W.2d 329 (S. D. 1959) ; *Rea* v. *Rea,* 245 P.2d 884 (Ore. 1952) ; *Jenkings* v. *Jenkings,* 23 N.E.2d 405 (Mass. 1939) ; *Wunsch* v. *Wunsch,* 20 N.W.2d 545 (Wis. 1945) ; *Biles* v. *Biles,* 236 P.2d 621 (Cal. 1951) ; *Balick* v. *Balick,* 92 A.2d 703 (Pa. 1952) ; *Thompson* v. *Thompson,* 55 N.W.2d 329 (Minn. 1952) ; *Noon* v. *Noon,* 191 P.2d 35 (1948) ; *Martínez* v. *Martínez,* 165 P.2d 125 (N. M. 1946). See also, *Use of Extra-Record Information in Custody Cases,* 24 U. of Chi. L. R. 349 (1957).

born baby girl; that after the divorce, the plaintiff has had two other children with men with whom she has not constituted a home; that the defendant has constituted a home with another woman and that both earn a total salary of three hundred forty dollars a month; that the children are in the home of their paternal grandparents where they are given tender care, attention and treated with love; that the defendant visits his children daily and takes pain over their school work; that the children attend school regularly "well dressed, clean and shod"; and that apparently the minors are "well adjusted" to the home of their grandparents.

As a matter of fact the plaintiff did not establish the facts alleged in her petition, that is, that she is in the proper economic conditions to provide her children with the *"proper surroundings"* for their upbringing and that the defendant has shown unconcern for their welfare. The evidence, as we have shown, establishes precisely the contrary. Notwithstanding the prejudicial information contained in the report of the Public Welfare Office, the petitioner made no effort to present other evidence to explain or controvert the facts. The disorderly conduct, not to use a stronger adjective, of the mother was not denied. In this sense, the present case is distinguishable from the situation considered in *Muñoz v. Torres*, 75 P.R.R. 476 (1953), where a woman lived in concubinage with another man in the same house with her son, who was a minor, which fact by itself did not indicate the probability that in the future there might exist "an immoral atmosphere and such corruption that might harm the moral personality" of the minor. *Cf. Effect of Adultery on Custody Awards*, 16 Wash. & Lee L. R. 287 (1959). Furthermore, the minors affected by this complaint have stated their wish to remain with their grandparents and although this is not a decisive factor, it merits consideration. *Rodríguez v. Pagán*, 67 P.R.R. 321 (1947); *Ríos v. Lafosse*, 59 P.R.R.

510 (1941) ; *Factual Consideration in Custody of Children,* 38 Minn. L. R. 623 (1954).

One of the roots of juvenile delinquency is the maladjustment and amorality prevailing in some homes and which offers, as the only result, unadapted children without any adequate concept of the ethical and moral standing of the individual. Nothing more appropriate than the exercise of the power of *parens patriae* by the state to attain in part, a remedial solution to this grave problem.

The judgment rendered by the Superior Court, Guayama Part, on June 24, 1959 will be reversed and the writ of habeas corpus is quashed.